UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA L. CORWIN, individually and on
behalf of all others similarly situated,

                Plaintiff,                        Case Number 09-13897
                                                               Honorable David M. Lawson

v.

LAWYERS TITLE INSURANCE CO., f.k.a.
LANDAMERICA TRANSNATION TITLE
INSURANCE CO.,

                Defendant.
_____/

## OPINION AND ORDER DENYING MOTION FOR CLASS CERTIFICATION AND SCHEDULING STATUS CONFERENCE

This case is before the Court on a motion to certify a class. The plaintiff alleges that the defendant overcharged her when she purchased a title insurance policy as part of a transaction in which she sold her home to a bank to satisfy mortgage indebtedness. The overcharge occurred, she alleges, when the title company did not afford her a discounted rate that must be granted when the purchaser of a title policy provides evidence that she previously had purchased other title insurance on the subject property. Her cause of action is based on the equitable theory of unjust enrichment. She also seeks a declaratory judgment that certain practices commonly used by the defendants in determining the appropriate charge violate the rate manual. The Court heard oral argument on the plaintiff's motion to certify the case as a class action on January 12, 2011, and the parties have filed several supplemental briefs since then. Although the Court found in a previous case that class treatment of unjust enrichment claims may be appropriate under similar circumstances, *see Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009), case law decided since that time

convinces the Court now that class certification is not appropriate because individual analysis of each class member's transaction is necessary to determine liability, the class action mechanism is not an efficient method for resolving this dispute, and the individual issues would predominate. Therefore, the Court will deny the motion to certify the class.

I.

The present case represents the third in a series of attempts by a class of customers to sue Lawyers Title Insurance Company for overcharging real estate sellers for owners' and mortgagees' title insurance policies by failing to apply discount rates that are prescribed in the rate manuals filed with state insurance commissioners. The plaintiff argues that based on certain amendments to the rate manuals the defendant filed with the Michigan insurance commissioner, the defendants engaged in an unlawful practice of demanding specific proof of prior title insurance policies before allowing customers the discounted rate.

When the plaintiff sold her house in 2008, she procured a title insurance policy for the benefit of the purchaser from Transnation Title Insurance Company. At the time, Transnation and defendant Lawyers Title Insurance Company were separate companies that shared a corporate parent, LandAmerica Inc. In late 2008, the companies merged into a single entity and continued to do business as Lawyers Title Insurance Company.

Michigan law requires title insurance companies to file with the state insurance commissioner manuals describing their schedule of premium rates. An insurer must charge its premiums according to the filed schedules. *See* Mich. Comp. Laws §§ 500.2406 & 550.2412. The rate manuals filed by both companies before the merger established a basic premium rate based on the amount of coverage sought for both owner's and lender's policies. Transnation's rate manual

-2-

filed in 2003 stated that it would discount premiums when a title insurance policy already had been issued on the property; the discount rate declined with the age of the previous policy. The language in the rate manual stated that the discount applied "[w]hen an existing policy is presented," presumably at the closing of the new sale or loan. Pl.'s Mot. Class Cert., Ex. 4, Rate Manual at 3.

The rate manuals on file by both Lawyers Title and Transnation in 2008 when the plaintiff closed her transaction also allowed discounts from the basic rates when previous title insurance policies had been issued on the subject property. However, the language in the manuals differed in a way that the plaintiff contends is significant. The updated language reads:

> When there exists evidence that a prior [owner's or loan] policy has been, or should have been issued, by any title insurer, a credit based upon the face amount of the prior policy will be given toward the purchase of a new policy . . . .

Am. Compl., ¶ 30 (footnote omitted) & Ex. B, Transnation Rate Manual, § II.B; Resp. Br., App'x at A137, Lawyers Title Rate Manual, at II.B.

The plaintiff argues that by eliminating the requirement that the prior policy be "presented," the new rate manuals cast the burden on the title insurers to search for and determine if prior title insurance exists on the property for which a new policy will be issued. If prior insurance exists, then, the plaintiff reasons, the title insurers are obligated to charge the discounted rate for the new policy in accordance with the rate schedule in the manual. The plaintiff further argues that if the title insurer charges such customers the basic rate, it has unjustly enriched itself. The plaintiff alleges that the defendant engaged in a practice of requiring positive proof of prior insurance in the form of an actual policy or a prior closing document — a HUD-1 settlement statement — before the discount would be allowed.

-3-

Plaintiff Barbara Corwin's individual claim arises from the January 31, 2008 short sale of her home in Ann Arbor, Michigan to her bank. At the time, she owed $310,250 on her mortgage, but the sale proceeds apparently fell $57,000 short of a full payoff. It further appears that she was able to walk away from the sale without any continuing debt owed to her bank. As part of the transaction, Ms. Corwin purchased an owner's title insurance policy from Transnation through its agent, State Street Title Agency, Inc., in the face amount of $290,000. Corwin alleged that she did not have a copy of a prior policy or HUD-1 settlement statement at the time she purchased this policy from Transnation. The defendant contends that its agent ordered a title search report on Corwin's property; and the report disclosed some documents in her chain of title that bore handwritten numerical notations on their face, which the defendant admits may be indicative of prior insurance policies on the property, although the notations may indicate something else, and local practices vary widely. The warranty deed that conveyed title to Corwin in 2003 included the designation "No Title Opinion Rendered." The defendant says that State Street's title search did not produce a prior policy and the plaintiff failed to disclose any information about a prior policy after multiple inquiries from State Street.

At the closing, the State Street representative gave Ms. Corwin notices that alerted her to the possibility of a discounted rate on a title insurance policy where "there is evidence of the existence of a prior title insurance policy issued by any title insurance company." Am. Compl., Ex. A, Notice. The form asked the seller to "[p]lease acknowledge your understanding of the above, even if no discount applies to your transaction, by signing below." *Ibid.* Corwin signed the form. She was charged a premium of $1,295 for the owner's title policy. She alleges, however, that she had a prior title insurance policy issued by First American Title Insurance Company in the coverage amount of

-4-

$305,000, which was issued on April 8, 2003 and recorded in her chain of title.  According to the defendant's rate manual, she should have received a discount of 10%.  During discovery, another policy surfaced from Absolute Title, Inc., an independent Transnation agent according to the defendants, which insured a 2005 mortgage that had been discharged in 2006.  The defendant states that Absolute Title never supplied the defendant's predecessor any information identifying the property or its owner.

The plaintiff filed a complaint on October 2, 2009 and an amended complaint on February 16, 2010 seeking relief for herself and a class of plaintiffs from the defendant's alleged failure to apply the reissue credit.  The amended complaint alleges that the defendant's practice of requiring customers to present evidence of prior insurance is unlawful, and the title companies are obliged to search the chain of title and charge discounted rates if there is any evidence of prior insurance, regardless of what evidence the customer presents.  The plaintiff alleges a theory of unjust enrichment and seeks damages and a declaratory judgment that her interpretation of the rate manual and the defendant's obligations thereunder is correct.

The plaintiff brings this action on behalf of herself and others similarly situated.  Although her proposed class definition has been a work in progress, it has evolved into the following, as set forth in a supplemental brief:

> All Persons who purchased:
> (a)  from October 2, 2003 to December 31, 2007, a Lawyers Title Insurance Corporation Owner's, Leasehold or Loan title insurance policy for residential, or commercial properties under $1,000,000, insuring real property located in the State of Michigan, and were charged the Basic Rate;
> (b)  from January 1, 2008 to present, a Lawyers Title Insurance Corporation Residential Title Insurance Policy for Owner's Basic Coverage and/or Mortgage Basic Coverage insuring property located in the State of Michigan, and were charged the Basic Rate; or

(c)     from January 1, 2008 to present, a Transnation Title Insurance Company Residential Title Insurance Policy for Owner's Basic Coverage and/or Mortgage Basic Coverage insuring real property located in the State of Michigan, and were charged the Basic Rate.

Pl.'s First Suppl. Br. at 1.

The Court ordered discovery on the issue of class certification and directed the plaintiff to file the present motion.  According the to parties, the available information indicates that in 2008 the defendant engaged in approximately 40,000 title insurance transactions and charged the discounted rate in about 82% of those cases.  The basic rate was charged in the remaining 18% of the transactions.  The plaintiff argues that the discovery materials reveal that the defendant systematically charged customers the basic premium rate instead of the discounted rate based on reissue credits.  The plaintiff points to testimony from one of the defendant's agents that the agents are required to follow the defendant's rate manual, but that the defendant also requires "absolute evidence of a prior policy" as a "mandatory" requirement for a reissue credit. Pl.'s App'x [dkt. #38], Ex. 1, dep. of Sarah Sutton at 88-90, 102, 121, 129, 132-33.  The defendant explains that the testimony did not represent a universal practice; rather, local practice varied widely among agents in Michigan and handwritten notes or numbers on recorded documents did not necessarily demonstrate that a prior policy had issued for the property.

The plaintiff filed her motion to certify the class alleging that the defendant's common practice of demanding strict proof of a prior title policy is common to all the claims of the absent class members and the requirements of Federal Rule of Civil Procedure 23 have been satisfied.  The defendant opposes the motion on the ground that each class member will be required to prove that he was overcharged when assessed the basic rate, which will require proof that an earlier title policy on each relevant property had been issued, and therefore individual issues will predominate.  The

-6-

defendant also argues that the plaintiff's experience with her short sale is so unique and atypical that she could not act as a proper class representative even if class certification were appripriate.

## II.

In its most recent term, the Supreme Court explained:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.  Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.  The Rule's four requirements — numerosity, commonality, typicality, and adequate representation — effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quotation marks and citations omitted).

According to Federal Rule of Civil Procedure 23, a matter may proceed as a class action in the name of representative parties if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 268 (E.D. Mich. 2001), *aff'd* 383 F.3d 495 (6th Cir. 2004).  A class must meet all of the above prerequisites plus one of those listed in Federal Rule of Civil Procedure 23(b) to be certified.  *Amchem Prods., Inc.*, 521 U.S. at 614; *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  The movant bears the burden of establishing that all prerequisites for class certification are satisfied.  *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1994).

When reviewing a motion for class certification, the Court must conduct a "rigorous analysis" of the requirements of Rule 23. *Sprague*, 133 F.3d at 397 (quoting *Geneneral Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The Court is not bound to accept the allegations on the face of the complaint as true, and should probe further into the facts where necessary to determine whether these requirements have been met. *Wal-Mart*, 131 S. Ct. at 2551-52; *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) ("[O]rdinarily the determination should be predicated on more information than the pleadings will provide."); *see also Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it.").

Rule 23 contains four prerequisites that the plaintiff must satisfy to be eligible for class action status:

(1) the class [must be] so numerous that joinder of all members is impracticable;
(2) there [must be] questions of law or fact common to the class;
(3) the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class; and
(4) the representative parties [must be able to] fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Amchem Prods.*, 521 U.S. at 613. These factors are known as the requirements of numerosity, commonality, typicality, and adequacy of representation. In addition to the four prerequisites in Fed. R. Civ. P. 23(a), the plaintiff must satisfy one of the subsections in Fed. R. Civ. P. 23(b). *Amchem Prods.*, 521 U.S. at 614; *Sprague*, 133 F.3d at 397.

The main thrust of the defendant's argument against class certification is that the plaintiff's claim cannot be common with absent class members who might allege they were overcharged because the determination requires an individual assessment of each of the respective real estate

-8-

transactions.  Indeed, that argument was found persuasive in several appellate decisions denying class certification in title insurance premium overcharge cases, including one decided recently in the Sixth Circuit.  *See Randleman v. Fidelity Nat'l Title Ins. Co.*, --- F.3d ---, 2011 WL 1833198 (6th Cir. May 16, 2011); *see also Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298 (5th Cir. 2009).

Commonality can be satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  That provision does not mandate that *all* questions of law and fact raised in the complaint are common.  Rather, "Rule 23(a) simply requires *a* common question of law or fact." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).  On the other hand, generalized or abstract commonality will not suffice.  *See Sprague*, 133 F.3d at 397.  "What we are looking for is a common issue the resolution of which will advance the litigation." *Ibid.*

The plaintiff has identified the following common questions:

(a) whether Defendant was obligated to charge title insurance rates that do not exceed title insurance premium rates on file;
(b) whether Defendant can require the policy purchaser to present evidence of a prior policy as requirement of entitlement to the reissue credit;
(c) whether Defendant was required to give the reissue credit to every purchaser of an owners or lenders policy of title insurance, for which the Basic rate is charged, unless the Defendant can establish that the policy being purchased is the first title insurance policy issued on the property;
(d) the construction of the Transnation and Lawyers Title Michigan rate manuals beginning January 1, 2008 to the present with respect to the application of the reissue credit;
(e) the construction of the Lawyers Title Michigan rate manuals beginning October 6, 2003, to December 31, 2007, with respect to the application of the reissue credit;
(f) whether Defendant was unjustly enriched by requiring purchasers of title policies for which the basic rate was applicable to present a prior title insurance policy or executed HUD-1 settlement statement as a condition to applying the reissue credit to their policy premium charge;
(g) [whether] declaratory judgment is appropriate; and
(h) whether Plaintiff and the members of the Class have sustained damages and, if so, what is the proper measure of those damages.

-9-

Mot. to Cert. Class at 2-3.  Indeed, each absent class member would have to establish these points to recover, but they could be determined at once for all the class members without individualized proof, with the exception of item (f).

However, the Supreme Court recently has made clear that the ability to articulate common questions does not by itself satisfy Rule 23(a)(2).  "Th[e] language [of Rule 23(a)(2)] is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).  Instead, the Court explained, "[the plaintiffs'] claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ibid.*  Finishing the point, the Court quoted this language: "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Ibid.* (quoting Nagareda, at 132).


In this case, the plaintiff's proposed class consists of all individuals who purchased title insurance during specified time periods and were charged the basic rate.  No absent class member can recover under the unjust enrichment theory, however, unless he or she can establish that there was a previous title policy issued on the specific property in question.  Such proof is uniquely individualized; it cannot be established on a classwide basis.  Therefore, instead of liability being

-10-

established "in one stroke," it would take an assessment of each transaction to determine if the absent class member qualified for the discount rate.  Finding that the defendant failed to make a proper inquiry would not establish that the title company was unjustly enriched by charging the basic rate absent proof that the seller's property was insured previously.   In order to make that determination, each transaction would have to be examined.  As a consequence, the plaintiff cannot satisfy the requirement of Rule 23(a)(2) because, although there are questions common to the absent class members and the plaintiff that must be decided before liability is established, the critical inquiry without which liability cannot attach requires individualized determination.

In addition, before a class can be certified under Rule 23(b)(3), as the plaintiff proposes here, "(1) questions common to the class [must] predominate over questions affecting only individual members, and (2) class resolution [must be] superior to alternative methods for adjudicating the controversy."  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).  "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof."  *Randleman*, 2011 WL 1833198, at *4 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)).

Certainly, because of the small amounts of damages involved in each overcharged transaction, class treatment of the claims might otherwise be appropriate.  However, "because the [plaintiff has] defined the class and presented [her] claim in a manner that requires substantial, individual inquiries," *Id.* at *5, class issues cannot predominate when the resolution of those common issues in the plaintiff's favor could not result in a finding of liability against the defendant on a classwide basis.  Even if the class could be certified under Rule 23(b)(2) on the declaratory

-11-

judgment count, before the main form of relief sought — damages — could be awarded, individualized decisions on liability would have to be made on the unjust enrichment count.

The Court concludes that the plaintiff has not satisfied the requirement of Rule 23(a)(2) or (b)(3). Therefore, the Court will deny the motion to certify the class.

III.

The plaintiff invoked the Court's subject matter jurisdiction under 28 U.S.C. § 1332(d), which requires minimal diversity, but does require that "the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). The plaintiff's claim for relief in her unjust enrichment count comes nowhere near that amount. Nor does it approach the $75,000 threshold for conventional diversity cases. *See* 28 U.S.C. § 1332(a). However, once jurisdiction is invoked properly at the beginning of a case, subsequent developments, including the denial of class certification, will not automatically divest the Court of continuing subject matter jurisdiction over the case. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806-07 (7th Cir. 2010).

IV.

The Court finds that the plaintiff has not satisfied all the requirements of Rule 23 for class certification.

Accordingly, it is **ORDERED** that the plaintiff's motion to certify the action as a class action [dkt. #37] is **DENIED**.

It is further **ORDERED** that counsel for the parties shall appear for a status conference on **August 16, 2011 at 11:00 a.m.**

-12-

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 1, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 1, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL